UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

MICHIGAN BIODIESEL, LLC,

          Debtor.

_____/

Case No. DK 10-05786
Hon. Scott W. Dales
Chapter 11

OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
United States Bankruptcy Judge

I. INTRODUCTION

The court entered an Order to Show Cause on September 27, 2011 (the "Show Cause Order," DN 233) because it doubted the propriety of substantial excise tax refunds that Chapter 11 Debtor Michigan BioDiesel, LLC ("Debtor") and non-debtor Tall Pine Trading, LLC ("Tall Pine") were claiming from the United States Treasury. The Show Cause Order directed the Debtor to explain why the court should not appoint a Chapter 11 trustee or examiner under 11 U.S.C. § 1104(a).

In response to the Show Cause Order, creditor Brenner Oil Company and the United States Trustee filed documents expressing support for the appointment of a trustee; the Debtor, in contrast, filed a lengthy memorandum opposing any such appointment. *See* Debtor's Memorandum of Fact and Law in Response to Court's Order to Show Cause (DN 233) (hereinafter "Debtor's Brief," DN 243). The court held its hearing on October 13, 2011 in Kalamazoo, Michigan. The Debtor called three witnesses: its principal, John Oakley; its consultant, Paul Jadrich; and its accountant, Terry Hall. The court admitted and reviewed eight exhibits. At the conclusion of the

hearing, the court took the matter under advisement and permitted the parties to file additional closing briefs. The United States Trustee and the Debtor filed closing briefs.

**Page 2 of 16**

## II. PROPRIETY OF COURT'S SHOW CAUSE ORDER

In its response Brief, the Debtor argued that the court lacks the authority to order the appointment of a trustee or examiner *sua sponte* because the applicable statute conditions such relief upon the request of a party in interest or the United States Trustee. *See* 11 U.S.C. § 1104(a). The argument ignores 11 U.S.C. § 105(a), which provides as follows:

> [n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a); *see also In re Embrace Systems Corp.*, 178 B.R. 112, 128 (Bankr. W.D. Mich. 1995) (*citing In re Mother Hubbard, Inc.*, 152 B.R. 189, 197 (Bankr. W.D. Mich. 1993)). The court regards its Show Cause Order as necessary and appropriate to ensure that the Debtor does not use this court's protection to perpetuate tax fraud, possibly harming the United States and the estate's creditors by generating several millions of dollars in administrative claims. The Debtor must adhere to federal tax laws while under the court's supervision. The Show Cause Order is the device the court uses to satisfy itself that the Debtor honors this obligation. *See* 28 U.S.C. § 960(a); 11 U.S.C § 105(a).

The Debtor's counsel also suggested that the expedited nature of the hearing unfairly burdened his client, because of the short time-frame for responding and the

complexity of the issues. On the first point, the fifteen-day notice in the Show Cause

Order does not depart from the usual periods for responding to motions generally. *See*

Fed. R. Bankr. P. 9006(d) (motions must be served not later than 7 days before the

hearing).

On the second point, the court would have expected the Debtor to have a better

understanding of its role in the tax refund transaction with Tall Pine and the propriety of

such an arrangement before it entered into the agreement in late 2008 and before it sought

the court's approval by filing a motion to bless the arrangement last month.  Therefore,

court reasonably expected some familiarity with the statutory and regulatory basis for

such substantial refund claims.

In sum, the court is satisfied that it proceeded in an appropriate manner by issuing

the Show Cause Order when and as it did.

### III. THE TAX CREDIT ISSUES

At the hearing, Mr. Oakley explained that the Debtor operates a facility in

Bangor, Michigan, which initially manufactured biodiesel from raw materials (including

waste products), but eventually became involved in refining crude glycerin that it

purchased from a variety of sources.  In its refining process, the Debtor produces three

"streams" of by-products: (1) a glycerin stream; (2) a fats and oil stream; and (3) a

methanol stream.  Of these three, only the glycerin stream is relevant to the tax credit

claims presently at issue.

According to Mr. Oakley and Mr. Jadrich, the Debtor's manufacturing process

makes the crude glycerin suitable for industrial purposes, including as an additive to coal

in rail cars.  The glycerin functions as an antifreeze and anti-collusive agent (addressing the coal industry's problems associated with storing and transporting coal by rail), and it also produces energy when incinerated along with the coal, typically to generate electricity.

According to the Debtor, the chemical and physical properties of glycerin make it qualify as a "green" or alternative source of energy.  It may be produced from renewable sources, biomass, and commercial or industrial waste. Congress supports alternative energy development through its tax and energy policies because, as Mr. Jadrich explained, without a subsidy, alternative fuels presently cannot compete on price with traditional fuels.  Congress provides such a subsidy through the Internal Revenue Code in the form of credits against fuel excise taxes.  In broad terms, the tax credits available to certain players in the stream of green energy commerce subsidize the production of alternative energy products, including (according to the Debtor) the glycerin products in which the Debtor and Tall Pine trade.  *See generally* 26 U.S.C. § 6426.

Although the Debtor's Brief implied that the Debtor and Tall Pine were claiming "Alcohol Fuel Mixture Credits,"[1] "Alternative Fuel Credits,"[2] and Alternative Fuel Mixture Credits,[3] at the hearing on the Show Cause Order the Debtor stipulated that it is claiming only the Alternative Fuel Mixture Credit under 26 U.S.C. § 6426(e).  Exhibits admitted at the hearing confirm that the Debtor is not claiming the Alcohol Fuel Mixture Credits. *See* Exhs. B1, B2 and E (Debtor fills out Form 8849, Schedule 3, § 3 under heading "Alternative Fuel Credit and Alternative Fuel Mixture Credit").

---

[1] 26 U.S.C. § 6426(b).
[2] 26 U.S.C. § 6426(d).
[3] 26 U.S.C. § 6426(e).

As Mr. Oakley explained, after Tall Pine and the Debtor decided to cooperate in delivering glycerin to end users, they entered into a Toll Processing Agreement dated Dec. 18, 2008 (Exh. B) to memorialize their relationship, including the portion that involves alternative fuel credits "associated with the product produced pursuant to this Toll Processing Agreement . . ." *See* Exh. B at § 7. According to Mr. Oakley, Tall Pine actually purchases glycerin from the Debtor that the Debtor in fact refines from its crude glycerin inventory.  As Debtor's counsel stated at a prior hearing, these purchases make Tall Pine the Debtor's largest customer.  *See* Hearing Tr. Sept. 26, 2011 (DN 235), 7:25-8:2 & 14:8.

The tax credit claims that prompted the Show Cause Order, however, do not relate to the glycerin manufactured or refined by either Tall Pine or the Debtor.  Instead, the Debtor is claiming a tax credit on behalf of Tall Pine (who is a broker) for glycerin that the Debtor neither created, refined, sold, nor used in its business.  Mr. Oakley candidly testified that the Debtor and Tall Pine prepared invoices and "blind bills of lading" to keep track of the credits and document them.  *See* Exhs. F, F1 & F2.  Although the testimony of Mr. Jadrich established that the industry uses blind bills of lading to protect a broker's role in ordinary transactions,[4] the problem with the Debtor's bills of lading is not that they are "blind," but that they are bogus: they create the false impression that the Debtor received and shipped product to and from Bangor, when the testimony clearly establishes that no such shipments took place.  In fact, the Debtor and Tall Pine structured the transaction in this way to create a "paper trail" precisely to support the tax credit claims, even though the shipping documents did not reflect reality.

---

[4] Mr. Jadrich explained that a blind bill protects the broker by preventing the ultimate customer from learning the identity of the original source of the goods and "cutting out the middleman" by dealing directly with the source. *See* Hearing Tr. Oct. 13, 2011, 93:9-24 & 101:18-22.

The Debtor's witnesses and professionals urged the court to accept this arrangement as "business as usual" under the tax code through which the federal government often endeavors to advance public policy aims, such as promoting alternative fuels. Mr. Hall (who testified) and Neil J. Hirschberg, Esq. (who made the closing argument) suggested that Congress really does not care who gets the credit and the court should not care either, as long as the Internal Revenue Service (the "IRS") does not complain. This "catch me if you can" approach to the tax credit troubles the court,[5] despite the argument of Mr. Hirschberg and others that the credit assists the alternative fuel market and its participants, and therefore does not offend Congressional design. Nevertheless, the court is not at liberty to disregard statutory and regulatory mandates simply because "all's well that ends well."

In its response to the Show Cause Order, the Debtor relies on a proposed IRS regulation that provides in relevant part as follows:

> (b) Conditions to allowance--(1) Excise tax credit. A claim for the alternative fuel mixture credit with respect to an alternative fuel mixture is allowed under section 6426 only if each of the following conditions is satisfied:
>
>   (i) The claimant produced the alternative fuel mixture for sale or use in the trade or business of the claimant.
>
>   (ii) The claimant sold the alternative fuel mixture for use as a fuel or used the alternative fuel mixture as a fuel.
>
>   (iii) The claimant is registered under section 4101 as an alternative fueler.
>
>   (iv) The claimant has made no other claim with respect to the alternative fuel in the mixture or, if another claim has been made,

---

[5] Mr. Hall described his approach as identifying a colorable basis for making the tax credit claim by pointing to IRS regulations, proposed regulations, publications, and forms, all in an effort to avoid a 20% penalty that the IRS might impose on tax advisors whose clients make extravagant or unwarranted claims.

such other claim is disregarded under this paragraph (b)(1)(iv). A claim is disregarded under this paragraph (b)(1)(iv) if it is an erroneous claim under section 6427 and either the claim has been disallowed or the claimant has repaid the government the amount received under section 6427 with interest.

(v) The claimant has filed a timely claim on Form 720, ``Quarterly Federal Excise Tax Return,'' that contains all the information required by the claim form described in paragraph (c) of this section.

Proposed Regulation § 48.6426-5 (73 Fed. Reg. 43,902 (July 29, 2008) (REG–155087–05)).    Because the Debtor is evidently making a claim under this regulation, the court must identify the "alternative fuel mixture" that triggers the refund right, and the Debtor's relationship to the mixture.  Congress has defined the term as follows:

(2) Alternative fuel mixture

For purposes of this section, the term "alternative fuel mixture" means a mixture of alternative fuel and taxable fuel (as defined in subparagraph (A), (B), or (C) of section 4083 (a)(1)) which—

(A) is sold by the taxpayer producing such mixture to any person for use as fuel, or

(B) is used as a fuel by the taxpayer producing such mixture.

26 U.S.C. § 6426(e)(2).  This definition, therefore, requires a combination or mixture of two types of fuel (alternative and taxable).  It also requires the "taxpayer producing such mixture" to either sell the mixture as a fuel or use it as a fuel. *Id.*

With respect to the glycerin the Debtor actually processed itself, the Debtor argued that the refined glycerin is the alternative fuel mixture because glycerin is both a taxable fuel (because it meets the definition of "diesel fuel") and an alternative fuel (because it derives from organic matter).  *See* Debtor's Brief at p. 16; *see* Hearing Tr. Oct. 13, 2011, 69:15.  In other words, the Debtor claims a right to a refund for glycerin that it mixes with other glycerin. This "mixture processing" seems more chimerical than

chemical, and is in any event incompatible with the notion of "mixture" –something derived from combining two different compounds.

Indeed, when asked to identify the "mixture" at the heart of the refund right, the Debtor's accountant, Mr. Hall, testified that the two components of the "alternative fuel mixture" are glycerin (as the alternative fuel) and coal (as the taxable fuel).  *See* Hearing Tr. Oct. 13, 2011; 144:17-145:15. Although Mr. Oakley endeavored to maintain the concept of mixture described in the Debtor's Brief, the testimony established that the mixing actually occurs when the coal company applies the glycerin to the coal. *Id.,* 30:10, 47:9-17.   This testimony contradicts the impression the Debtor attempted to create in its brief when arguing that mixing glycerin with itself created an alternative fuel mixture.

In its brief, the Debtor also attempted to argue that it qualified as a "mixture producer" eligible to claim the tax credit related to Tall Pine and the Toll Processing Agreement because the Debtor took title to the "mixture" from Tall Pine immediately after its creation:

> **In other cases, as under its Toll Processing Agreement, MBD purchases glycerin from TPT and sells it back to TPT, a broker, who then sells it to Freedom Industries, a chemical company who then sells it to the coal companies**. Under Proposed Regulation §48.6426-1(b)(2), the mixture producer is "the person that has title to the mixture immediately after it is created," In the case of glycerin sales from TPT to MBD, MBD would be the "mixture producer", as it takes title to the mixture immediately after its creation, a mixture sold to MBD before it was created pursuant to the Toll Processing Agreement and documented by the bills of lading and invoices from TPT.

Debtor's Brief at p. 12 (emphasis in original); Proposed Regulation § 48.6426–1(b) (73 Fed. Reg. 43,896 (July 29, 2008) (REG–155087–05)).  This argument, however, cannot

Page 9 of 16

withstand scrutiny for at least two reasons.  First, assuming, *arguendo*, that title passed from Tall Pine to the Debtor under the blind bill of lading, and assuming, further, that glycerin mixed with itself constitutes an alternative fuel mixture, the testimony established that Tall Pine is simply a broker, and did not mix or create anything. Necessarily, then, Tall Pine must have taken title from someone else (its seller) that created the supposed mixture.  At most, Tall Pine might qualify as "the person that has title to the mixture immediately after it is created," but the Debtor, who derived title from someone who did not create the mixture, did not take title "immediately" after the mixture is created.

Moreover, given Mr. Hall's testimony that the alternative fuel mixture is the combination of the coal and the glycerin that occurs in the coal yards, the Debtor at best has title immediately *before* the mixture is created, not *after*.  Thus, the Debtor cannot meet the statutory definition of "alternative fuel mixture" because the Debtor is not a "mixture producer" and is not the "taxpayer producing such mixture" who either used it or sold it as fuel. *See* 26 U.S.C. § 6426(e)(2).  Perhaps the coal companies who purchased the glycerin might qualify for the alternative fuel mixture credit under the statute but, as the witnesses explained, they prefer to take the more lucrative carbon credits, and this reportedly forecloses them from claiming the alternative fuel mixture credit. In other words, they cannot claim both.  *See* Hearing Tr. Oct. 13, 2011, 98:5-11.

The Debtor and its professionals argue that as long as the coal companies are not claiming the credit, it is available to anyone within the supply chain because Congress is trying to encourage alternative energy. This approach, however, ignores the statute upon which the entire credit scheme depends.

It is worth noting that IRS Publication 510 — the more accessible description of the alternative fuel mixture credit upon which Mr. Hall placed much reliance during the hearing—similarly provides no support for the Debtor's position regarding the claimed credit:

> Alternative fuel mixture credit. If you used an alternative fuel to produce an alternative fuel mixture for sale or use in your trade or business, you may be eligible for a credit or refund. An alternative fuel mixture is a mixture of alternative fuel and taxable fuel (gasoline, diesel fuel, or kerosene). You must sell the mixture to any person for use as a fuel or use the mixture as a fuel.

Publication 510 (Rev. July 2011), at p.23. Here, as Mr. Oakley testified with respect to the Debtor's role in claiming the Tall Pine credits, the Debtor did not use an alternative fuel to produce an alternative fuel mixture — it simply accepted a bill of lading and issued a bill of lading.

Mr. Hall testified that he understood the taxable fuel in the Debtor's case to be coal, but Publication 510 in fact refers to " gasoline, diesel fuel, or kerosene." It is difficult to understand how this admittedly informal description of the alternative fuel mixture credit induced Mr. Hall to espouse the views he did during the hearing.

The Debtor and its witnesses put much weight on the word "produce" as used in the statute and regulations, suggesting that the Debtor may be regarded as producing the glycerin described in the blind bills of lading even though its only function was to produce documents in support of the paper trail and lend its § 4101 registration to Tall Pine. Mr. Hall noted that the IRS deliberately used the word "produce" rather than "manufacture" and he inferred, without citation to authority, that this choice somehow sanctions claims by an entity — the Debtor — who "produces" only a blind bill of lading, and a false one at that. The court does not share Mr. Hall's wishful inference.

From the testimony, the court concludes that neither the Debtor nor Tall Pine is eligible to claim the credit that the Debtor processes for Tall Pine. The Debtor, as explained immediately above, is the claimant, but cannot establish that it "produced the alternative fuel mixture for sale in its business" and is not, in any event, a "mixture producer." The mixture, as testimony from the Debtor's witnesses established, takes place after the Debtor or Tall Pine sells it to the end user, *i.e.*, when the coal company applies the glycerin to the coal. For these reasons, the Debtor has not shown that it meets the requirements of the statute or Proposed Regulation § 48.6426-5(b)(1)(i) or (ii). The Debtor, as claimant, did not sell the "mixture." *See* 26 U.S.C. § 6426(e)(2) (defining " alternative fuel mixture " as a mixture of alternative fuel and taxable fuel which "is sold by the taxpayer producing such mixture to any person for use as a fuel").

The testimony also established that Tall Pine uses the Debtor to process the tax refund claims because the Debtor is registered under 26 U.S.C. § 4101 but Tall Pine is not. This means that Tall Pine does not, itself, satisfy Proposed Regulation § 48.6426-5(b)(1)(iii). In the court's opinion, neither the Debtor nor Tall Pine may claim the refund. When the court specifically asked how it is that both parties may claim the refund when neither, alone, can do so, the court got no satisfactory answer. *See* Hearing Tr. Oct. 13, 2011, 130:24-134:6.

Tall Pine and the Debtor are not alchemists who can turn glycerin into gold simply by trading blind bills of lading.

IV. <u>REMEDY</u>

Given the magnitude of the credits and the court's doubts about the Debtor's role in claiming them, the court must decide whether to direct the United States Trustee to appoint a trustee or an examiner, under 11 U.S.C. § 1104(a).

Although the court does not share the Debtor's opinion on the merits of its tax position, neither is the court persuaded at this time that the Debtor is acting with fraudulent intent. First, the court recognizes that the Debtor had a very small window in which to claim the credits for 2010, the period affected by Congress's decision to resurrect the alternative fuel mixture credit retroactively. *See* Pub. L. 111–312, title VII, § 704(c), Dec. 17, 2010, 124 Stat. 3311 (reviving credit retroactively for 2010, subject to IRS guidance and regulation, and opening 180 day window to file claims).  Second, the court infers from the testimony that other players in the Debtor's industry and the Debtor's professional advisors share the Debtor's view of the alternative energy subsidy discussed at the hearing.

For their part, although officials from the Internal Revenue Service and Department of Justice (United States Trustee's Office) were on notice of the court's concerns at least after entry of the Show Cause Order, only the United States Trustee responded and appeared.[6] Indeed, the United States Trustee has a statutory obligation to seek the appointment of a trustee if there are reasonable grounds to suspect that a debtor's CEO "participated in actual fraud, dishonesty, or criminal conduct in the management of the Debtor." 11 U.S.C. § 1104(e). The United States Trustee, however, has not filed any such motion, even though in oral and written arguments he suggested that a trustee might be warranted.  Given this restraint, and Mr. Rietberg's comments at the hearing, it seems

---

[6] *See* Hearing Tr. Oct. 13, 2011, 22:13-19.

fair to infer that the United States Trustee does not yet believe criminal conduct is afoot, or at least the matter is still under investigation. *See* Hearing Tr. Oct. 13, 2011, 19:25-20:3 (noting that the United States Trustee cannot file a motion for appointment of a trustee just because "we have questions about something").

Appointing a trustee and dispossessing a Chapter 11 debtor is a drastic remedy, especially when it occurs on the court's initiative. *See In re Embrace Systems Corp.*, 178 B.R. at 128 (court may raise issue when "persuasive evidence comes to the court's attention on the record which may lead to a conclusion that cause exists or an abuse of process is occurring"). Certainly, as Brenner Oil's counsel argued, the appointment of an independent trustee would instill confidence in this case in which the parties have clearly come to distrust each other, but this relief would come with a price.

From the Debtor's monthly operating reports, even without considering the doubtful tax refund revenue, it appears the Debtor is performing admirably in its business. This is likely due to the experience, expertise and business relationships that Mr. Oakley and the Debtor's other employees bring to the table. Appointing a trustee could deprive the estate of these benefits and might jeopardize the Debtor's business. As the court consistently noted throughout the hearing, it issued the Show Cause Order primarily because of its concerns about the tax refunds and the very real possibility that the Debtor's refund claims might give rise to staggering administrative claims if the IRS shares the court's interpretation. When it issued the Show Cause Order, it did not intend to open the door to general complaints about the Debtor's schedules and monthly operating reports, or other events (such as discovery disputes) taking place in this case.

Faced with a Debtor that is performing well, post-petition, but which showed poor judgment regarding an arcane and admittedly confusing aspect of its affairs, the court reaches for a scalpel rather than a hacksaw. Under these circumstances, it favors an examiner over a trustee.

After the court directed the Debtor to show cause why it should not appoint a trustee or examiner, Debtor's counsel, during closing argument, came very close to embracing the appointment of an examiner. *See* Hearing Tr. Oct. 13, 2011, 165:13-166:15. The Debtor has not consented to the appointment of an examiner, nor has it offered strenuous resistance to this aspect of the Show Cause Order.

The court also recognizes that it is not a tax tribunal and that its opinions are not flawless. On the present record, the court would appreciate an examiner's independent advice on these complex issues of federal tax and energy policy. Similarly, as Brenner Oil acknowledged during the hearing, the creditors would benefit if the Debtor's view of the tax credits were correct because the relationship with Tall Pine would prove very valuable.

Accordingly, the United States Trustee, in consultation with the parties, shall propose an examiner versed in tax law. The examiner, after the court's approval of the appointment, shall review the Debtor's relationship with Tall Pine and the Debtor's role in claiming the alternative fuel mixture (and similar) credits. After the investigation, the examiner shall prepare a report that includes at least the following: (1) an opinion regarding the propriety of the Debtor's tax credit claims, past, pending, and anticipated; (2) a recommendation of the steps, if any are necessary, to mitigate the effects of such claims made or paid; and (3) a report concerning whether the examiner believes the

**Page 15 of 16**

Debtor or its management participated in actual fraud, dishonesty, or criminal conduct within the meaning of 11 U.S.C. § 1104(e) and the basis for this belief.

The court recognizes that an examiner will not have the authority to manage the Debtor's business or seek to avoid payments already made to Tall Pine. With respect to the former, the court is not moved to displace management at this time. With respect to the latter, the court could address the issues through the plan confirmation process (Brenner Oil has filed a competing plan) or, upon motion of an interested party, through the appointment of a trustee. In addition, the parties in this case are familiar with the Sixth Circuit's opinion in *Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995) (requirements that a creditor must meet before filing derivative suit on behalf of bankruptcy estate).

## V. <u>CONCLUSION AND ORDER</u>

To summarize, the court will address its lingering doubts about the alternative energy tax credits by appointing an examiner, rather than a trustee. This relief is more narrowly tailored to the concerns that prompted the Show Cause Order.

Nothing in this Opinion and Order, however, shall foreclose the United States Trustee or a party in interest from bringing an independent motion for the appointment of a trustee for cause, other than cause relating to the tax credits, provided, however, that the United States Trustee or a party in interest may raise the Debtor's role in claiming the tax credits as cause to appoint a trustee after the examiner issues his or her report, if the report otherwise suggests cause.

NOW, THEREFORE, IT IS HEREBY ORDERED that the United States Trustee shall appoint an examiner (the "Examiner") and file an application for approval of the appointment, within 21 days after entry of this Opinion and Order, in accordance with Fed. R. Bankr. P. 2007.1(c).

IT IS FURTHER ORDERED that the Examiner shall conduct an examination consistent with this Opinion and Order and promptly prepare a report that includes at least the following: (1) an opinion regarding the propriety of the Debtor's tax credit claims, past, pending, and anticipated; (2) a recommendation of the steps, if any are necessary, to mitigate the effects of such claims made or paid; and (3) a report concerning whether the Debtor or its management participated in actual fraud, dishonesty, or criminal conduct within the meaning of 11 U.S.C. § 1104(e).

IT IS FURTHER ORDERED that the Examiner, in rendering the opinion and report contemplated in the immediately preceding paragraph, shall not be bound or otherwise constrained by the court's analysis of the tax issues expressed in this Opinion and Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Cody H. Knight, Esq., W. Brad Groom, Esq., Jerome D. Frank, Esq., Dean E. Rietberg, Esq., Tall Pine Trading, LLC (c/o Mr. Tracy Daniels), and all entities who have requested notice of the proceedings.

END OF ORDER

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: October 31, 2011**