UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

MICHIGAN BIODIESEL, LLC,

               Debtor.

_____/

Case No. DK 10-05786
Hon. Scott W. Dales
Chapter 11

## OPINION AND ORDER
### REGARDING MBD RESCUE, LLC'S LIFT STAY MOTION

PRESENT:    HONORABLE SCOTT W. DALES
                     United States Bankruptcy Judge

After the Debtor Michigan BioDiesel, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, a group of interested parties formed MBD Rescue, LLC ("Rescue") to purchase the note and security documents formerly held by the Debtor's principal lender, Bank of America (the "Bank"). Rescue has filed a motion for relief from the automatic stay (the "Motion," DN 327) in order to rectify an erroneous post-petition filing of a Uniform Commercial Code ("UCC") termination statement and to ratify the filing of its correction statements or amendment documents.  The court heard argument on the Motion in Kalamazoo, Michigan on May 2, 2012, and took the matter under advisement. With the consent of the parties, and in order to afford them an opportunity to settle their dispute, the court agreed to briefly postpone its ruling.  The parties have not settled the dispute within the time allotted, and for the reasons that follow, the court will grant the Motion in part, and deny it in part.

On February 9, 2011, Rescue attempted to amend the Bank's initial financing statement or "UCC 1" to reflect the assignment from the Bank to Rescue by naming

Rescue as the secured party of record in a document filed with the Michigan Secretary of State. Unfortunately, through the law office's error, a clerk or paraprofessional filed a termination statement (*see* Motion at Exh. F) rather than an amendment, as evidently intended. Realizing the mistake, and within minutes thereafter, Rescue's counsel filed a correction statement pursuant to M.C.L. § 440.9518. *See* Motion at Exh. G.

Seizing on this error, Brenner Oil Company ("Brenner") and eventually the Chapter 11 Trustee Thomas Tibble ("Trustee") formally and informally asserted that Rescue's counsel's missteps in filing the termination statement transformed Rescue's formerly secured claim into nothing more than an unsecured claim, and that filing the corrective statement nine minutes later was ineffective because it violated the automatic stay.

In response to these challenges, Rescue's Motion seeks three forms of relief: (1) an order granting relief from the automatic stay; (2) an order declaring that the termination statement was ineffective due to the filing error and lack of authority; and (3) an order declaring that Rescue maintains its secured position. The first request —relief from the stay— is properly before the court on the Motion, but the second and third requests are not, because they pertain to the validity, priority, and extent of Rescue's security interest and must be resolved in the context of an adversary proceeding.

Having reviewed the record and considered the arguments of counsel, the court finds that Rescue's filing of the correction statement (Exhibit G) violated the automatic stay because the filing qualified as an act to perfect a lien against property of the estate, assuming the termination statement (though erroneous) was effective. *See* 11 U.S.C. § 362(a)(4). In our Circuit, such acts are "voidable" and "invalid," and should ordinarily

be voided unless "equity dictates otherwise." *See Easley v Pettibone Michigan Corp.*, 990 F.2d 905, 910 (6th Cir. 1993). Rescue appeals to equity for an order ameliorating the effect of its termination statement, arguing that the clerical error harmed no one, and should be ignored as a matter of equity. Moreover, it asks the court to ratify the corrective statement, notwithstanding the automatic stay. In short, Rescue attempts to bring its case within the exception recognized by the Sixth Circuit to treat the filing as invalid (but susceptible to validation) because "equity dictates otherwise."*Easley*, 990 F.2d at 910.

In drawing the distinction between "void' acts and "voidable" acts, the *Easley* decision simply recognized that actions taken in violation of the stay can be cured or ratified, given the court's authority to "annul" the stay, and thereby provide retroactive relief.

As a statutory matter, the court may grant relief from the stay, either by terminating, annulling, modifying, or conditioning the stay "for cause." 11 U.S.C. § 362(d). "Cause" is a flexible concept that permits the court to address a variety of situations not expressly contemplated in the statute. *See In re Holly's, Inc.*, 140 B.R. 643, 687 (Bankr. W.D. Mich. 1992) ("'Cause' under § 362(d)(1) is an intentionally broad and flexible concept which must, of necessity, be determined on a case by case analysis."); *State Bank v. Miller (In re Miller)*, 459 B.R. 657, 676 (B.A.P. 6th Cir. 2011). As the cases cited in *Holly's* illustrate, courts find cause in a variety of forms. And, as the legislative history suggests, cause may include "the lack of any connection with or interference with the pending bankruptcy case." *Id.* at 684 (*citing* H.R.REP. NO. 595, 95th Cong., 1st Sess. 343–44 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6300).

Here, it appears that on February 9, 2011, Rescue was attempting to correct the public record by putting the world on notice of the assignment, and perhaps by taking steps to continue the effectiveness of the Bank's initial financing statement that was set to lapse on the fifth anniversary of its filing —on or about July 24, 2011. *See* Motion at Exh. B; M.C.L. § 440.9515(1) & (4). Neither of those steps, however, would have interfered with the bankruptcy proceedings for at least two reasons.

First, and most generally, a creditor's perfected status is generally determined as of the petition date, and there is apparently no question that Rescue's predecessor (the Bank) was perfected as of that date. *Limor v. First National Bank of Woodbury (In re Cumberland Molded Products, LLC)*, 431 B.R. 718, 722 (6th Cir. B.A.P. 2010) (perfected status assessed as of the petition date, in part to avoid problem of secret lien).

Second, and more specifically, the automatic stay does not prevent an act to maintain perfection of a security interest, provided the trustee's rights are subject to such perfection under 11 U.S.C. § 546(b) and applicable nonbankruptcy law. *See* 11 U.S.C. § 362(b)(3). Here, the UCC provides that a secured party may continue its perfection by filing a continuation statement, and that its priority relates back to filing or perfection, whichever is earliest, so long as the secured party's interest was continuously perfected. *See* M.C.L. § 440.9322(1)(a); 11 U.S.C. § 546(b)(1)(B). Because the court does not perceive any attempt to affect the estate resulting from Rescue's missteps on February 9, 2011, the court finds cause to grant relief from the stay.

As noted above, however, the court does not intend in this Opinion and Order to finally resolve any issue regarding the validity, priority or extent of Rescue's security interest because such a determination is beyond the scope of a contested matter under 11

U.S.C. § 362 and expressly requires an adversary proceeding under Fed. R. Bankr. P. 7001(2). *See Simon v. JP Morgan Chase Bank, N.A. (In re Lebbos)*, 455 B.R. 607, 612-13 (Bankr. E.D. Mich. 2011). Indeed, as the parties well know, the court is entertaining an adversary proceeding against Rescue in which they have raised the effect of the erroneous termination and corrective statements. *See Brenner Oil Co. v. MBD Rescue, LLC*, Adv. No. 11-80027 (*e.g.*, DN 77 & 91).

Although the panel's decision in *Cumberland Molded Products* suggests that the termination and corrective statement controversy (or the possible post-petition lapse of the Bank's financing statement) may turn out to be a tempest in a tea pot, the court declines Rescue's request to ignore the termination statement or declare that Rescue continues to enjoy the status of a perfected secured creditor. Indeed, the court may not ever need to reach the question because (as between Brenner and Rescue) the controversy is not so much a matter of perfection as attachment: the dispute mainly involves whether certain machinery constitutes fixtures (subject to Brenner's mortgage) or personal property (not subject to Brenner's mortgage). In any event, state and federal law, advanced in appropriate proceedings and not this contested matter, will determine these questions of validity, priority, or extent of the competing interests.

To summarize, the court will annul the automatic stay. Consequently, the termination and corrective statements (Exh. F & G) will stand as filed, for whatever effect they may have on the rights of the parties or the property of the estate.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 327) is GRANTED IN PART and DENIED IN PART, and the automatic stay is ANNULLED to the extent provided in this Opinion and Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Cody H. Knight, Esq., W. Brad Groom, Esq., Jerome D. Frank, Esq., Dean E. Rietberg, Esq., Perry G. Pastula, Esq., John T. Piggins, Esq., and all entities who have requested notice of the proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 21, 2012**



Scott W. Dales
United States Bankruptcy Judge